# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: <br><br> MARK AHMED JALAJEL AND ANN MARIE JALAJEL <br><br> Debtors, <br><br> RAY PUGSLEY, <br><br> Plaintiff, <br><br> vs. <br><br> MARK AHMED JALAJEL, <br><br> Defendant. | Case No. 09-11453-RGM <br> (Chapter 7) <br><br><br><br><br> Adv. Proc. No. 09-01141 |

### MEMORANDUM OPINION

This complaint seeks to deny the debtor a discharge. It is based on the debtor's failure to schedule jewelry, undervaluing the jewelry he did schedule, and selling jewelry that was property of the estate after the filing of the petition and without court authorization. The complainant asserts that the omission of jewelry and the undervaluation of the listed jewelry constitute a false oath under 11 U.S.C. §727(a)(4)(A) and the omission, undervaluation, and post-petition sales constituted concealment made with the intent to hinder, delay or defraud in violation of 11 U.S.C. §727(a)(2)(B).

### FINDINGS OF FACT

The debtor filed a joint petition together with his wife under chapter 7 of the Bankruptcy Code on February 27, 2009. He filed his schedules and statement of financial affairs a month later

1

on March 31, 2009, after having been granted an extension of time within which to do so. Schedule B listed personal property with a total value of $75,014.34 of which $58,395.00 was two cars. The remaining scheduled property was a bank account with a balance of $1,156.34; household furnishings and clothing valued at $6,550.00; jewelry valued at $8,800.00; a Rolex watch valued at $100.00;[1] four life insurance policies with either no value or an unknown value; interests in twelve limited liability companies valued at $1.00 each; and a dog valued at $1.00. The jewelry and Rolex watch were listed on Schedule B,[2] Item 7, "Furs and jewelry", which stated:

| Item | Owner | Value |
|---|---|---|
| Necklaces earrings, bracelets, and watch | Wife | $1,500.00 |
| Wedding ring | Wife | $7,000.00 |
| Watch | Husband | $100.00 |
| Wedding band | Husband | $300.00 |

The debtor purchased 28 pieces of jewelry (not including his Rolex watch) for $119,056.60 from a single jewelry store in Occoquan, Virginia, within about two years before he filed bankruptcy.[3] In three separate post-petition transactions, he sold jewelry and his Rolex watch to a pawn shop for a total of $11,200. The first sale was on March 2, 2009, for $2,200; the second on March 11, 2009, for $2,000; and the last on May 1, 2009, for $7,000. The last was a sale of two

---

[1] The watch was not identified as a Rolex on Schedule B. The description was simply "Watch".

[2] Schedule B was never amended. The debtor amended Schedule A on May 7, 2009, to show that one condominium listed was furnished and Schedules C and F on April 19, 2010, to increase the value of a claim of exemption for tax refunds from $1.00 to $10,321.66 and to add a homeowners association as an unsecured creditor.

[3] The debtor's answer to Question 1 on the Statement of Financial Affairs stated that he had no net self-employment income for 2008 or in 2009 to the date of the filing of the petition. However, his self-employment income for 2007 was $1,048,864 with additional salary income of $51,869, rental income of $18,000 and dividends and interest of $17,212. Unsecured debts were scheduled at $101,411,176.85, most of which were scheduled as disputed and unliquidated.

items, his wife's wedding ring for which he received $4,000 and his Rolex watch for which he received $3,000.

The debtor sold or pawned 12 pieces of jewelry (not including his Rolex watch) for $10,625. Nine sales appear to have been pre-petition.[4] The total $10,625 sales price for the pre-petition and post-petition sales was 12.7% of the original purchase price of $86,628.40. Seven pieces of jewelry were lost, including one earring each from two pairs of earrings.[5] On the day he filed his petition in bankruptcy, he and his wife owned 14 pieces of jewelry including one earring from each of two pairs of earrings. While the record is not entirely clear, it appears that the purchase price of the jewelry the debtor and his wife owned on the day they filed their petition was about $95,815. If the value of that jewelry (without the Rolex watch) was the same 12.7% of the purchase price as all the jewelry sold, it had a value of $12,168 on the date of the filing of the petition.

The value of the "necklaces, earrings, bracelets, and watch" was listed at $1,500. The purchase price of the necklaces, earrings and bracelets was about $74,420. Without the two pairs of earring for which one earring was missing, the purchase price was $69,229. Applying the sales percentage of 12.7% to the latter, the value of the items on the day the petition was filed was $8,792 plus the value of an unidentified watch. The debtor overvalued his wife's wedding ring on Schedule B. He valued it at $7,000 on March 31, 2009. He sold it on May, 1, 2009, for $4,000. He valued his wedding band at $300. It does not appear to be a part of the 28 pieces of jewelry. The Rolex

---

[4] In response to Question 10a on the Statement of Financial Affairs ("List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case."), the debtor answered, "None."

[5] In response to Question 8 on the Statement of Financial Affairs ("List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case."), the debtor answered, "None."

watch was significantly undervalued. He listed it separately and valued it at $100 on March 31, 2009. He sold it on May 1, 2009, for $3,000.

The debtor overvalued jewelry that was exempt without limitation as to value and undervalued jewelry that was exempt but only to a limited value. In Virginia, wedding rings are exempt without consideration of their value. Va.Code (1950) §34-26(1a). Wearing apparel is exempt to the extent of $1,000. Va.Code (1950) §34-26(4). Each debtor is entitled to a homestead exemption of $5,000.[6] Va.Code (1950) §34-4.

The wedding ring and band were claimed exempt under Va.Code (1950) §34-26(1a). The valuation of the wife's wedding ring was not critical to the debtor because it was exempt without limitation as to value. It was overvalued at $7,000.

The "necklace, earrings, bracelets and watch" were claimed exempt under both Va.Code (1950) §§34-4 and 34-26(4), the to the extent of $1,500. The valuation of the "necklace, earrings, bracelets and watch" and the separately itemized Rolex watch were important to the debtor if they were to be fully exempted. The wearing apparel exemption is limited to $1,000. It is not clear that jewelry is "wearing apparel", but even if it is, the debtor scheduled clothing at $400, reducing the potential exemption for the jewelry. The debtor included the necklace, earrings, bracelets and watch on his homestead deed, claiming $1.00 exempt.[7]

---

[6]The exemption is the maximum that may be claimed by a householder during his lifetime although the maximum may be increased if certain criteria are satisfied.

[7]This is done so that the debtor could later increase the exemption amount if necessary. After the deadline for filing the homestead deed has expired, a debtor may increase, to the maximum limitation, the value claimed exempt, but may not add a new item. By using a placeholder of $1.00, the debtor maintains flexibility to amend the amount of any particular item later if the circumstances should arise. It can be beneficial for the debtor to keep the value of the items claimed exempt to a minimum so that less of the homestead exemption is used. In this case, the strategy was well worth the effort. The trustee caused, with the debtor's assistance, the debtor's tax returns to be amended which resulted in a tax refund of more than $100,000. The debtor amended his claim of exemption for tax refunds from $1.00 to $10,321.66 to claim a portion of the tax refund as exempt. That, of course, means that the portion of the jewelry and watches

Two creditors objected to the debtor's claim of exemption. The objection has not been resolved. Property remains property of the estate until it is exempted by the debtor, sold by the trustee or abandoned. 11 U.S.C. §§363, 522(l) and 554. A claim of exemption is not effective until any objection to it is resolved and the claim of exemption allowed. The jewelry sold by the debtor after filing his joint petition was property of the estate when sold. The rest of the jewelry remains property of the estate.

## CONCLUSIONS OF LAW

Section 727 provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently . . . made a false oath or account." 11 U.S.C. §727(a)(4)(A). The party objecting to the discharge has the burden of proving by a preponderance of the evidence that a ground for denying the discharge exists. *Farouki v. Emirates Bank Int'l., Ltd.,* 14 F.3d 244, 249 (4th Cir. 1994). The complainant must prove that the debtor knowingly and fraudulently made a false statement of a material nature under oath in connection with his bankruptcy case. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 250 (4th Cir. 1987); *Peoples Bank of Charles Town v. Colburn (In re Colburn)*, 145 B.R. 851, 853 (Bankr.E.D.Va. 1992). A material omission from a debtor's sworn schedules is a false oath and may be grounds for denying a debtor a discharge. *See e.g. Butler v. Ingle (In re Ingle)*, 70 B.R. 979, 983 (Bankr.E.D.N.C. 1987). A material false oath is one which "bears a relationship to the debtor's . . . estate, concerns the discovery of assets or business dealings, or the existence and disposition of property." *Fed. Dep. Ins. Corp. v. McFarland*

---

exempted under the homestead deed remains limited to $1.00.

5

*(In re McFarland)*, 197 B.R. 222, 224 (Bankr.E.D.Va. 1995). Materiality is not restricted to the value of the omitted item. A statement or an omission is material if it adversely affects the ability of the trustee or creditor to discover other assets or fully investigate the debtor's pre-bankruptcy dealings and financial condition.

The false oath must be made knowingly and fraudulently. *Hatton v. Spencer*, 204 B.R. 477 (E.D.Va. 1997). Fraudulent intent can be inferred from circumstantial evidence or from a course of conduct. *Williamson*, 828 F.2d at 252, *Farouki*, 133 B.R. 769, 782 (Bankr.E.D.Va. 1991) *aff'd Farouki v. Emirates Bank, Int'l, Ltd.,* 14 F.3d 244 (4th Cir. 1994). Reckless indifference to the truth also constitutes fraud sufficient to deny a debtor his discharge. *National Post Office Mail Handlers v. Johnson (In re Johnson),* 139 B.R. 163, 166 (Bankr.E.D.Va. 1992).

The complaint also alleges that the debtor transferred or concealed property of the estate in violation of 11 U.S.C. §727(a)(2)(B). Section 727(a)(2)(B) provides that a debtor may be denied a discharge if he, "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property . . . has transferred, removed . . . or concealed, or has permitted to be transferred, removed . . . or concealed . . . (B) property of the estate, after the date of filing of the petition." While it is not necessary to find that the debtor violated both §727(a)(2)(B) and (a)(4)(A), the same acts may violate both sections.

The debtor omitted jewelry from his schedules, undervalued the jewelry and the Rolex he scheduled and sold his Rolex watch and jewelry post-petition with the intent to defraud his creditors. It is clear that jewelry was omitted and undervalued and that the nature of the Rolex watch was concealed by not revealing that it was a Rolex and by substantially undervaluing it. The fraudulent intent is inferred from the debtor's actual knowledge. He had paid almost $120,000 for the jewelry

and believed it was of significant value. In fact, after he received several offers that he felt were unreasonably low, he returned to the jewelry store where he had purchased the jewelry and complained. The debtor's actual knowledge arose from all the sales. While he knew when he signed the schedules that the price at which he had purchased the jewelry was not their value, he could reasonably estimate the value from the percentage of the purchase price he received. But, he did not even have to do that. He had actually sold four items after filing his petition but before he completed and signed his schedules and knew exactly what they were worth. Even with that knowledge, he undervalued all the items except his wife's wedding ring. His Rolex watch is of particular concern. He failed to identify the brand and valued it at $100. He knew the brand and had sold it for $3,000.

The schedules are false as to the extent of the jewelry owned. The debtor scheduled items as a group, labeling them "necklaces, earrings, bracelets, and watch" with an aggregate value of $1,500. The debtor purchased 28 separate pieces of jewelry for almost $120,000. While some had been sold pre-petition, the jewelry scheduled does not adequately describe what remained when the debtor field bankruptcy. By not adequately identifying the jewelry, here by identifying it only generally as a group, he concealed the extent of his holdings. He could have listed each item separately but did not. The debtor was recklessly indifferent to the truth with respect to the valuations of his jewelry. He made no meaningful investigation into its value. He knew that he valued it highly. He had spent a lot of money – almost $120,000 – for it. He knew when he tried to sell some before filing bankruptcy that the price at which he could sell it was a fraction of the price he had paid for it. While using the sales as a guide for the value when he filed might have been satisfactory, he did not use this method. He made no other effort to value the jewelry such as having it inventoried and appraised. While it can reasonably be accepted that the price the debtor could sell

the jewelry he had purchased was less than the price he could sell it for, the discrepancy he discovered when he attempted to sell it alerted him to the fact that he had insufficient personal knowledge to value his jewelry. Without basing an estimate of value on the sales prices he had received or on an appraisal, he was merely guessing at the value. The low valuation misled the trustee and the creditors. The low valuation suggested more than ordinary jewelry, but nothing approaching jewelry with a relatively recent aggregate purchase price of almost $120,000.

The debtor argues that the false statements were immaterial to the administration of the estate and, therefore, insufficient to deny a discharge. He argues that even if the assets were disclosed they would not have materially affected the distribution to creditors. He notes that there are claims against him of more than $50 million and the an additional $10,000 would have a *de minimus* effect on any distribution to unsecured creditors. There is no *de minimus* exception. *Dean v. McDow*, 299 B.R. 133, 140 (E.D.Va. 2003). Section 541(a) of the Bankruptcy Code requires a debtor to list all assets regardless of whether the debtor believes the assets are worthless. *United States v. Van Allen*, 524 F.3d 814, 822 (7th Cir. 2008). It was incumbent upon the debtor to properly schedule and value his jewelry. The decision of what to do with the jewelry and how to administer the estate was for the trustee, not the debtor. The debtor schedules his assets. The trustee administers them. If the trustee believes the assets are of *de minimus* value, he will abandon them. To adopt the debtor's argument, debtors with lots of debt would be able to omit more property than a debtor with only a few small debts.

In any event, the jewelry was not of *de minimus* value. In addition to providing funds for distribution to creditors, it could also have provided the trustee with funds to investigate the debtor's financial transactions further. In this case, creditors complain that millions of dollars of income was

unaccounted for. The complaints may well prove to be wrong, but the trustee could well have concluded that the funds he could receive from the sale of the jewelry should be used to investigate the complaints.

The debtor argued that he relied on the advise of counsel to derive the valuations. Valuation can be difficult for debtors because they have no information about the value of used household furniture or furnishings that they may have owned for years. Counsel frequently illustrates the meaning of fair market value by referring to a yard sale or and estate sale for household furniture and furnishing or other sources such as classified advertisements or internet sites, both auction sites and sites that provide listings of items available for purchase. These provide a frame of reference and resources for debtors to assist them in valuing their assets. In this case, debtor's counsel explained this to the debtor. However, the debtor did not disclose to his attorney that he had sold some jewelry, both before filing the petition, and after filing the petition but before he signed his schedules. Nor did he rely it. The debtor had better information available to him to value the jewelry. He had actual sales from which he could have reasonably estimated the value of the remaining jewelry and for the jewelry he sold after filing but before signing his schedules, he had an actual sales price. Instead of using the actual knowledge he possessed, especially the actual post-petition actual sales prices, he used significantly lesser values.

The debtor argues that he lacked fraudulent intent because he used the proceeds of the sale of jewelry to meet his family's needs for food and medical care. The argument is a double-edged sword. It also shows a motive to conceal the assets. The assets were readily convertible to cash. In fact, the debtor easily sold some jewelry to obtain cash. Had he disclosed the existence of the jewelry or its true value, he would have been deprived of this source of funding for his family. In

9

order to provide for his family, he concealed the jewelry and undervalued what he did disclose.[8] The court appreciates that the debtor – and many other debtors – are in dire financial circumstances when they file bankruptcy. Bankruptcy is one way to get a fresh start, to get out of the dire circumstances and to be able to provide for ones family in the future. The bankruptcy bargain is straightforward. The debtor gets a discharge and a fresh start. In return, he must be honest, his financial condition and affairs must be transparent and he must surrender his non-exempt assets. In this case, the debtor did not live up to his part of the bargain. His schedules were false. His jewelry assets were unclear. He converted property of the estate for his own purposes. It does not matter why a debtor files false schedules or conceals assets; if he knowingly and fraudulently does so, it is fact that he does so that is the offense.[9]

## CONCLUSION

The debtor will be denied a discharge.

Alexandria, Virginia
October 8, 2010

                                               /s/Robert G. Mayer
                                             Robert G. Mayer
                                             United States Bankruptcy Judge

Copies electronically to:

John Paul Forest, II
Steven B. Ramsdell
Martin J. Yeager
16229

---

[8] The only jewelry he overvalued was his wife's wedding ring. He paid $21,395 for it and sold it for $4,000 on May 1, 2009. It will likely be wholly exempt.

[9] A debtor's understanding of what he may or may not do as evinced, in part, by his conduct, sheds light on his intent and may negate a proscribed intent. That is not the case here.